Filed 4/9/25  P. v. White CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081511 |
| v. | (Super.Ct.No. INF2300211) |
| WADE ORA WHITE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Shay Dinata-Hanson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Wade Ora White of one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)) and one count of making a criminal threat (Pen. Code, § 422) and found true personal use firearm enhancements associated with each count (Pen. Code, § 12022.5, subd. (a); undesignated statutory references are to this code). In 2023, the trial court sentenced White to six years in state prison, composed of a two-year low-term sentence for the assault conviction, the midterm of four years for the firearm enhancement associated with that offense, and a concurrent four-year midterm sentence for the criminal threat conviction.

On appeal, White argues that the trial court was unaware of legislative changes made in 2022 that affected the court's sentencing discretion. In particular, he argues that the trial court was unaware that the low-term presumption of subdivision (b)(6) of section 1170 (§ 1170(b)(6)) applied because White suffers from posttraumatic stress disorder (PTSD). He also argues that the trial court erred by not affording great weight to the mitigating circumstance of his PTSD in considering whether to dismiss the firearm enhancement under subdivision (c) of section 1385 (§ 1385(c).) We affirm.

BACKGROUND

I.      *The trial*

In December 2018, Rue Mann was working as a UPS delivery driver. White was working as a night watchman at Two Springs RV Resort (Two Springs). Mann delivered a package to Two Springs one night while White was working. White opened the gate to

allow Mann to drive into the community, which he did. Mann parked, got out of the vehicle, and handed White a package.

Mann reentered the truck and started organizing items in the back of the truck for his next delivery. White approached the truck and told Mann two times that he needed to leave. Mann responded, "[C]hill the fuck out." According to Mann, White then entered the truck, pulled out a gun, and pointed it at Mann. White acted like a "madman," screaming and yelling, "I'll fucking kill you, you never fucking talk to me like that." White repeatedly threatened to kill Mann. Mann apologized and begged for his life. Mann walked backward further into the back of the truck and fell over a box, with White pursuing him. White held the gun approximately eight inches away from Mann's face. White allowed Mann to get up but "[s]tarted going crazy again." Mann turned around and started praying. White eventually exited the vehicle. Mann drove out of Two Springs and called law enforcement.

Law enforcement arrived within several minutes. White was inside the guard's shack. A sheriff's deputy searched the shack and found a loaded firearm.

White testified at trial. He denied that he went inside the truck or that he had a gun. White said that he pulled out a taser to defend himself against Mann.

II.     *The verdict*

In May 2023, a jury convicted White of one count of assault with a firearm (§ 245, subd. (a)(2); count 1) and one count of making a criminal threat (§ 422; count 2). With respect to both counts, the jury found true that White personally used a firearm.

3

(§ 12022.5, subd. (a).) The jury also found true the following aggravating circumstances: (1) Both offenses involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; (2) White used a firearm during the commission of the offenses; and (3) White engaged in violent conduct indicating a serious danger to society. (Cal. Rules of Court, rule 4.421(a)(1)-(2), (b)(1); undesignated rule references are to these rules.)

III. *Sentencing*

A probation officer interviewed both White and Mann for the presentencing report. White was 42 years old and did not have a criminal history. After high school, White was a Benedictine monk for seven years until he realized that he did not want to be celibate his entire life. He enrolled in the military and served as a radio frequency transmissions operator. While on a date in 2012, White was in a serious car accident that shattered both of his ankles. He was honorably discharged from the military the following year, having served four years. White reported that he developed PTSD because of the car accident, but it was not medically diagnosed until 2021.

White refused to discuss the circumstances of the offenses but acknowledged that he read the police reports of the incident and "'disagreed'" with them. White "declined to state whether anything was happening in his life at the time of the incident which would help to explain why he did what he did . . . ."

Mann provided the probation department with a victim impact statement. He remained haunted by the incident five years later and was no longer working as a delivery

4

driver at UPS, because he could not enter the back of the truck. Mann now worked as a janitor. He reported that he had been diagnosed with PTSD and that he suffered from flashbacks, nightmares, uncontrollable thoughts about the incident, and severe anxiety.

The probation department recommended that White be sentenced to five years of probation. The department considered the following factors to support a grant of probation: (1) "[T]he crime was committed because of a mental condition and it is likely the defendant will respond favorably to treatment that would be required as a condition of probation" (rule 4.413(c)(2)(B)), and (2) White was considered a low risk for recidivism according to a risk and needs assessment (rule 4.413(c)(3)).

Before sentencing, the People filed a sentencing brief, and White filed a statement in mitigation.[1] White notified the court that he intended to introduce mitigating evidence, including that "at the time of the incident" "[h]e was likely suffering from undiagnosed PTSD" as a result of the years-earlier car accident. White asked to be referred to veteran's court pursuant to section 1170.9 because of the PTSD diagnosis. In the alternative, White asked the court to follow the probation department's recommendation to sentence him to probation. Attached to White's brief were numerous letters to the court from friends and family.

The People contested White's eligibility for veteran's court. The People noted that White had not produced any documentation confirming that he actually had been diagnosed with PTSD, and White was not eligible for veteran's court in any event

---

[1] White also submitted a four-page letter to the court that is not included in the record on appeal.

5

because the PTSD did not stem from his military service. The People argued against sentencing White to probation, as there were no unusual circumstances to overcome the presumptive denial of probation because of White's use of a deadly weapon. The People noted that the only applicable mitigating circumstances under rule 4.423 were that White did not have a criminal history and that White "suffered a mental condition that significantly reduced his culpability."

The sentencing hearing was held in June 2023. The judge who presided over the trial was unavailable, so a different judge presided over White's sentencing. Defense counsel indicated that White wanted to be sentenced on that day because he had friends and family attending the hearing, and White expressly agreed to be sentenced by a judge who did not preside over the trial.

The People reiterated their arguments that the defendant's conduct was not so unusual as to warrant probation and that White did not qualify for veteran's court. The People emphasized that the circumstances of the offenses were "egregious," that they had an "egregious" impact on Mann, and that White had not taken any responsibility for the offenses. The People acknowledged that White did not have a criminal history but argued that the mitigating factor was overcome by the fact that White "was convicted of two strike offenses, and there are three aggravating factors under each of the counts that the jury found true."

Mann addressed the court and explained how his life had been negatively impacted by the PTSD that he suffered as a result of the incident. Mann asked the court to sentence White to state prison.

Defense counsel argued that the court should follow the probation department's recommendation and sentence White to probation. With respect to veteran's court, counsel remarked that he could "see that there is a bit of an issue with the nexus" in that "[w]hile the accident did happen while he was in the military, it wasn't while he was on active duty." The court interrupted and noted that veteran's court did not appear to be a close case since the accident occurred during White's personal time and was unrelated to his military service. Defense counsel conceded the issue.

White addressed the court and stated: "Your Honor, I just wish to express my deep remorse and that this happened. And that it was never my intention for anything like this to ever happen in my life. I express remorse and apologies to Rue Mann. And I hope that you have mercy on me."

After hearing argument from counsel and the statements from Mann and White, the court indicated that it wanted to take a recess "to think about this for a bit." Before taking the break, the judge noted that his position was typically to sentence a defendant to "probably probation" for the first felony conviction unless precluded by law or if "you seriously hurt someone or use a gun." The court added: "And when I say 'use a gun,' I don't mean just armed. I mean you actually use it affirmatively. In this particular case, the defendant did that."

The court acknowledged that it was mindful of the fact that White served in the military, but the court added: "[A]ll of the considerations that we typically give to someone with PTSD from their service in the Army—in the Armed Forces doesn't apply here. And what I mean by that is I can understand how someone who just came from a hot military zone where the stressful situations were kill or be killed, who was brought immediately back because if they reached the end of their—their service or the end of their rotation, came immediately back stateside, confronted with the stressful or hostile situation, might react instantly with violence. [¶] That is not how I understand this fact pattern. I understand he was in the Armed Forces. I didn't hear anything about being in—in hostilities, him being in fire fights, him being in environments where he would have to react violently. I heard was that he was in the Armed Forces, he was honorably discharged, and that he suffered from a car accident. And I can understand why someone might have PTSD from a car accident. [¶] But—but not in a way that would explain that reaction to what amounts to an insult. And the escalation from what amounts to a fairly de minimis insult to—to the display of a gun—not just the display of a gun, the—the aggressive use of the gun, putting it in someone's face, is extraordinarily concerning to me."

The court decided against sentencing White to probation, because he had not taken responsibility for what happened. As to count 1, the court stated: "In terms of selecting midterm, upper term, or low term, statutorily, I'm supposed to start at midterm." The court sentenced White to the low term of two years for count 1, reasoning that the low

term was appropriate because White did not have a criminal history and the incident appeared to involve anomalous behavior on White's behalf. As to the associated firearm enhancement, the court remarked that it would be hard "to deviate from the, at the very least, midterm" given that White's use of the gun was "squarely in the heart of what the statute was designed to prohibit and to punish." The court accordingly sentenced White to the midterm of four years for the firearm enhancement associated with count 1. For count 2, the court sentenced White to a concurrent midterm sentence of two years. The court struck the firearm enhancement associated with that count under section 654.

## DISCUSSION

The Legislature amended section 1170 and section 1385 effective January 1, 2022 (Stats. 2021, ch. 695; Stats. 2021, ch. 719; Stats. 2021, ch. 731; Stats. 2021, ch. 721), one and one-half years before White was sentenced. White contends that the trial court misunderstood or was unaware of the sentencing discretion afforded by those statutory amendments and thus erred by failing to apply the low-term presumption under section 1170(b)(6) and by not dismissing the firearm enhancement under section 1385(c). The People counter that both arguments are forfeited because White did not make them in the trial court. We agree with the People and reject White's contention that his trial counsel rendered ineffective assistance by failing to object or to advance the arguments at sentencing.

In 2022, the Legislature amended section 1170 to impose limits on a trial judge's discretion in choosing between the low, middle, and upper terms of a sentencing triad.

9

(*People v. Lynch* (2024) 16 Cal.5th 730, 748.)  Before the amendments, if a statute prescribed a sentencing triad, the court had discretion to choose any one of the three terms.  (*Id.* at pp. 747-748.)  As amended, section 1170 now provides that "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" unless certain aggravating circumstances are stipulated to by the defendant or found true beyond a reasonable doubt by a trier of fact.  (§ 1170, subd. (b)(1)-(2).)  Notwithstanding that general presumption favoring the middle term, section 1170(b)(6) separately creates a presumption in favor of the low term if "a contributing factor in the commission of the offense" was that the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."  (§ 1170, subd. (b)(6)(A).)  The presumption can be overcome if "the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice."  (§ 1170(b)(6).)

In 2022, the Legislature also amended section 1385 to include subdivision (c).  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 295; *People v. Walker* (2024) 16 Cal.5th 1024, 1028.)  Section 1385(c) provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1).)  Subdivision (c)(2) of section 1385 provides:  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by

10

the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  One of the mitigating circumstances is:  "The current offense is connected to mental illness."  (§ 1385, subd. (c)(2)(D).)  Mental illness is statutorily defined as including PTSD.  (§ 1385, subd. (c)(5).)  "A court may conclude that a defendant's mental illness was connected to the offense if, after reviewing any relevant and credible evidence, . . . the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense."  (*Ibid.*)

In general, if a criminal defendant "does not object to the sentence in the trial court, they may not claim on appeal the trial court failed to properly make or articulate its discretionary sentencing choices."  (*People v. Tilley* (2023) 92 Cal.App.5th 772, 778 (*Tilley*); *People v. Scott* (1994) 9 Cal.4th 331, 351.)  It is undisputed that at sentencing White did not advance either of the arguments that he makes on appeal.  The arguments on appeal are therefore forfeited unless an exception applies.  One such exception concerns the trial court's failure ""'"to exercise a discretion conferred and compelled by law"'"" (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1023), resulting in a sentence that

11

is not based on "the exercise of the 'informed discretion' of the sentencing court" (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8).

White contends that this exception to forfeiture applies, because he is not challenging the manner in which the trial court exercised its discretion but instead "challenges the trial court's misapprehension of its sentencing obligations under" section 1170(b)(6) and section 1385(c). We disagree. White "has not affirmatively demonstrated that the trial court was unaware of or misunderstood the scope of its sentencing discretion." (*People v. Coleman* (2024) 98 Cal.App.5th 709, 724 (*Coleman*).) Instead, he relies on the fact that the trial court did not make any reference to section 1170(b)(6) or section 1385(c) to support his contention that the trial court misunderstood or was unaware of its sentencing obligations under those provisions. (*Coleman*, at p. 724.) But White was sentenced one and one-half years after the relevant amendments to section 1170(b)(6) and section 1385(c) became effective. "We assume the trial court was aware of and followed applicable law." (*Coleman*, at p. 724; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

Moreover, the record affirmatively demonstrates that the trial court was aware of the 2022 amendments to section 1170 affecting its choice between the low, middle, and upper terms of a sentencing triad when it correctly stated that it was "supposed to start at [the] midterm." The court explicitly recognized that the statute now provided a general presumption favoring the middle term. (§ 1170, subd. (b)(1).) Under these circumstances, we cannot conclude from the court's silence about section 1170(b)(6) and

12

section 1385(c) that the court misapprehended the applicable sentencing law and the discretion afforded under those provisions. (*Coleman*, *supra*, 98 Cal.App.5th at p. 724.) We accordingly conclude that White forfeited the arguments that he makes on appeal by failing to object below. (*Ibid.* [the defendant's argument on appeal that the trial court erred by not dismissing any enhancements under § 1385(c) "is forfeited for failure to request that the trial court strike the enhancements under section 1385"]; *Tilley*, *supra*, 92 Cal.App.5th at p. 778 [the defendant did not seek a lower term under § 1170(b)(6) or object to imposition of the middle term and thus forfeited the argument concerning the low-term presumption].)

White argues in the alternative that if his trial counsel's inaction resulted in forfeiture of the arguments that he now raises, then counsel rendered ineffective assistance. The argument lacks merit.

"To establish ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and counsel's deficient performance was prejudicial, that is, there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Sepulveda* (2020) 47 Cal.App.5th 291, 301; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) A defendant asserting ineffective assistance of counsel on direct appeal bears a "'difficult'" burden because "a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had 'no rational tactical

purpose' for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) "When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, [the] defendant must show that there was ""'no conceivable tactical purpose'"" for counsel's act or omission." (*People v. Centeno* (2014) 60 Cal.4th 659, 675; *People v. Caro* (2019) 7 Cal.5th 463, 488.) "Representation does not become deficient for failing to make meritless objections." (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

White fails to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness. The low-term presumption under section 1170(b)(6) does not apply unless the defendant's psychological trauma "was a contributing factor in the commission of the offense." (§ 1170(b)(6); *id.*, subd. (b)(6)(A).) Likewise, under section 1385(c), the court "shall consider and afford great weight" to the mitigating circumstance of the defendant's mental illness only if "[t]he current offense is connected to mental illness" (§ 1385, subd. (c)(2)(D)), meaning that "the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense" (*id.*, subd. (c)(5)). The trial court expressly rejected the contention that White's PTSD contributed to the underlying offenses, stating: "I can understand why someone might have PTSD from a car accident. [¶] But—but not in a way that would explain that reaction to what amounts to an insult. And the escalation from what amounts to a fairly de minimis insult to—to the display of a gun—not just the display of a gun, the—the aggressive use of the gun, putting it in

14

someone's face, is extraordinarily concerning to me." In light of the trial court's finding that White's PTSD did not contribute to the offenses, any objection that the low-term presumption under section 1170(b)(6) applied because of the PTSD or that the firearm enhancement should be dismissed under section 1385(c) because of the PTSD would have been meritless. White's trial counsel was not deficient for failing to make meritless objections. (*People v. Kipp* (1998) 18 Cal.4th 349, 373 ["Measured against the standard of a reasonably competent attorney, defense counsel's performance was not deficient merely because counsel failed to make these meritless motions"].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

FIELDS
Acting P. J.

RAPHAEL
J.

15